IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SPRING VALLEY PRODUCE, INC. d/b/a PRODUCE CONNECTION AND THE SALAD FARM, LLC,**<br>          **Plaintiff,** | **CIVIL ACTION** |
| v. | NO.  15-193 |
| **STEA BROS., INC, FRANK STEA, JR. AND ANTHONY STEA,**<br>          **Defendants.** | |

## MEMORANDUM OPINION

Plaintiffs Spring Valley Produce, Inc. ("Spring Valley") and The Salad Farm, LLC, ("Salad Farm") filed their Complaint in this action on January 15, 2015, seeking to recover funds allegedly owed to them for produce that they sold to Defendants.  Defendants Stea Brothers, Inc. ("Brothers") and Anthony Stea ("Stea") (collectively the "Defendants") were served on January 26, 2015.  ECF Nos. 4, 5.  Nevertheless, they have failed to respond to the Complaint, and on March 9, 2015, the Clerk of Court entered default against them.  In their present motion, Plaintiffs seek the entry of a default judgment and an award of damages.  For the reasons discussed below, the motion will be granted as to those parties.[1]

## I.     STATEMENT OF FACTS[2]

Plaintiffs are sellers of perishable agricultural commodities.  Compl. ¶ 12-13.  Defendant Brothers was in the business of buying and selling perishable agricultural commodities throughout the United States and was, at all times relevant to this action, licensed by the United

---

[1]    Defendant Frank Stea filed a timely Answer, and this Order does not apply to him.

[2]    Because Defendants failed to file a responsive pleading to the complaint, the allegations of the Complaint are deemed admitted.  Fed. R. Civ. P. 8(b)(6).  The Court also will accept for the purposes of this motion the facts set out in the supporting declarations and their supporting exhibits, which also are uncontroverted.  *See Turk v. Invacare Corp.*, No. 09-25, 2010 WL 4741096, at *3 (E.D. Pa. Nov. 16, 2010); *Luis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002)

States Department of Agriculture as a broker, commission merchant and/or dealer of perishable agricultural commodities pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e *et seq.* ("PACA"). Compl. ¶ 4. At all relevant times, Stea was an officer, director shareholder and/or controlling principal of Brothers and was responsible for its daily management and control. *Id*. ¶ 6.

Between November 15, 2013 and February 6, 2014, Plaintiff Spring Valley sold perishable agricultural commodities to Brothers in a series of transactions with a total price of $159,945.95. *Id*. ¶ 12. Between January 4, 2014 and March 4, 2014, Plaintiff Salad Farm sold such commodities to Brothers in a series of transactions with a total price of $25,988.80. *Id*. ¶ 13.[3] Brothers received and accepted all of the shipped commodities. *Id*. ¶ 14. For each of the transactions, Plaintiffs forwarded invoices to Brothers, each of which contained the language required by 7 U.S.C. § 499(c)(4), giving notice to Brothers that the commodities sold were subject to the PACA trust provisions stated in 7 U.S.C. § 499(e)(c)(2). Camany Decl. ¶ 8 & Ex. 1; Meena Decl. ¶ 8 & Ex. 1. Defendants have made payments of $42,918.70 to Spring Valley, leaving a principal balance of $117,027.25 unpaid. Compl. ¶ 16. Defendants have made payments of $7,145.48 to Salad Farm, leaving a principal balance of $18,843.32 unpaid. *Id*. ¶ 17. Salad Farm's invoices include terms requiring Brothers to pay 1.5% monthly interest on past due balances and attorneys' fees and costs. *Id*. ¶ 19. Spring Valley's invoices contain no such terms.

---

[3] In their Complaint, Plaintiffs make their allegations against Brothers, AS and non-defaulting codefendant Frank Stea, referring to them generically as "Defendants." The declarations and exhibits they have submitted in support of this motion, however, reflect that the sales were made to Brothers rather than to the individual defendants. *See* Camany Decl. Ex. 1; Meena Decl. Ex. 1.

**II.     Analysis**

Courts have discretion to enter default judgments. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Default judgments, however, are disfavored. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1983). Whenever practicable, cases should be decided on the merits. *Hritz*, 732 F.2d at 1131. In determining whether to grant a default judgment, a court should first determine whether the unchallenged facts stated in the complaint establish a cause of action. *Md. Cas. Co. v. Frazier Family Trust*, No. 13-2311, 2014 WL 345218, at *2 (E.D. Pa. Jan. 30, 2014); *Carrol v. Stettler*, No. 10-2262, 2012 WL 3279213, at *2 (E.D. Pa. Aug. 10, 2012).

   *A.     Whether Plaintiffs Have Established a Cause of Action Against Brothers*

Under PACA, it is unlawful for a dealer in commodities to fail to make prompt, full payment to the person with whom it made a commodity transaction. 7 U.S.C. § 499b(4). To ensure payment, perishable agricultural commodities sold and the proceeds from the resale of those commodities are held in trust by the buyer for the benefit of the seller until full payment is made to the seller.

> Perishable agricultural commodities received by a commission merchant, dealer or broker . . . and any receivables or proceeds from the sale of such commodities . . . shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

*Id*. § 499e(c)(2). It is unlawful for a buyer to fail to maintain the PACA trust for the benefit of the seller. *Id*. § 499b(4). The purchaser is charged with a duty to insure that the PACA trust has sufficient assets to ensure prompt payment of the amounts owed to the seller. *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 166 (3d Cir. 2010). A purchaser who violates these provisions is liable for the full amount of damages

the seller sustains. 7 U.S.C. § 499e(a). Federal District Courts are "vested with jurisdiction specifically to entertain . . . actions by trust beneficiaries to enforce payment from the trust." *Id*. § 499e(c)(5).

In the uncontroverted pleadings of their Complaint, Plaintiffs have alleged that they supplied Brothers with agricultural commodities covered by PACA, Compl. ¶¶ 12, 13, and that they have not received full payment for those commodities. *Id*. ¶¶ 16, 17. They further allege that Defendants have failed to maintain the trust assets and keep them available to satisfy their claims as required by PACA. *Id*. ¶ 27. Thus, they have stated a valid claim that Brothers is liable for the amounts due them. *See* 7 U.S.C. § 499e(a).

**B**     ***Whether Plaintiffs Have Established a Cause of Action Against Stea***

As for Stea, Plaintiffs also have stated a valid claim against him as a PACA trustee. "'[I]ndividual shareholders, officers, or directors of a corporation *who are in a position to control trust assets,* and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." *Bear Mountain*, 623 F.3d at 171 (emphasis in original) (quoting *Golman–Hayden Co. Inc. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000)); *see also Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705-06 (2d Cir. 2007) (similar standard). Plaintiffs have alleged that Stea was an officer, director, shareholder, and/or controlling principal of Brothers, Compl. ¶ 6, was responsible for the daily management and control of Brothers, *id*. ¶ 7, and was in position to control Brothers' PACA trust assets, *id*. ¶ 8. Absent contravention, he is liable for breach of his fiduciary duty to preserve trust assets. *See Bear Mountain*, 623 F.3d at 171-72 (individuals can be personally liable if they actually were in a position to control the

PACA trust assets); *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) (principals personally liable where they were in position to control PACA trust assets).

### C.     *Whether a Default Judgment is Warranted*

Having determined that Plaintiffs have alleged a valid claim against Brothers and Stea, the Court must next consider the following factors in determining whether a default judgment is warranted: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

Prejudice to the plaintiff exists where denial of a default judgment would "impair the plaintiff's ability to effectively pursue his or her claim." *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. March 12, 2013). Where, as here, a defendant fails to respond to the complaint, the potential delay threatens to carry on indefinitely, and that potential delay establishes prejudice to the plaintiff. *Md. Cas. Co.*, 2014 WL 345218 at *3. As discussed *infra* Section IID, Plaintiffs have established their claims through declarations and business records of the transactions in question. No litigable defense appears from the record. Defendants received personal service of the Complaint on January 26, 2015, ECF Nos. 4, 5, and the Clerk entered a default against them over one month ago. Defendants have stood silent and declined to participate in this litigation in any respect. A defendant's failure to participate in a case creates a presumption of culpability. *Id*. at *4. Accordingly, a default judgment is warranted, and Plaintiffs' motion will be granted.

D.     *Calculation of Damages*

A party who fails to respond to a complaint is deemed to have admitted its allegations "other than [those] relating to the amount of damages." Fed. R. Civ. P. 8(b)(6). When a court determines to order a default judgment, it then has the power to assess the amount that the plaintiff lawfully is entitled to receive and to award judgment in that amount. *Pope v. United States*, 323 U.S. 1, 12 (1944). Federal Rule of Civil Procedure 55(b)(2) authorizes the court to conduct a hearing to calculate damages. It is not required to do so, however, as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp. Div. of Ace Young, Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). The court must "'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp. v. Star Atlantic Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

The Court concludes that a hearing is not necessary in this case because the Plaintiffs have submitted sufficient testimonial and documentary evidence to establish the amount of damages due. Plaintiff Spring Valley has submitted the declaration of its President, John L. Meena, along with supporting documentation. A review of that material has satisfied the Court that Defendants owe Spring Valley the principal amount of $117,027.25. Meena Decl. ¶¶ 6, 10 & Ex. 1. In addition, Spring Valley seeks prejudgment interest at the Pennsylvania statutory rate for contracts, which is 6%. 41 Pa. Cons. Stat. § 8101 (judgment for a specific sums bears interest at the lawful rate); *id*. § 202 (lawful rate is 6%). There is no mention in PACA regarding the awarding of prejudgment interest. However, Congress drafted PACA broadly to allow recovery of "all sums owing in connection with perishable agricultural commodities transaction,"

6

7 U.S.C. § 499e(c)(2).  *See Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1222 (9th Cir. 2002).  As a general rule the failure to mention interest in a statue permits the courts to fashion rules governing the awarding of interest in light of the congressional purpose behind the statute.  *Rogers v. United States*, 332 U.S. 371, 373 (1947); *Poleto v. Consol. Rail Corp*, 826 F.2d 1270, 1274-75 (3d Cir. 1987).  Given PACA's broad reach, prejudgment interest is routinely awarded.  *Weis-Buy Servs. Inc. v. Paglia*, 307 F. Supp. 2d 682, 694 (W.D. Pa. 2004); *Red's Market v. Cape Canaveral Cruise Line, Inc.*, 181 F. Supp. 2d 1339, 1344 n.2 (M.D. Fla. 2002), *aff'd*, 48 F. App'x 328 (11th Cir. 2002) (table); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590, 595 (S.D.N.Y. 1995); *Valley Chip Sales, Inc. v. New Arts Tater Chip Co.,* No. 96-2351, 1996 WL 707028, at *6 (D. Kan. Oct. 10, 1996); *In re W.L. Bradley Co.*, 78 B.R. 92, 94 (E.D. Pa. 1987).  "Allowing a buyer to make late payment without paying the appropriate interest, and accumulating the interest for itself, is antithetical to the purpose of PACA."  *In re Fleming Cos.*, 316 B.R. 809, 816 (D. Del. 2004).  Accordingly, the Court finds that an award of prejudgment interest is appropriate to effectuate the statutory purpose and finds further that the Pennsylvania statutory rate for contract claims is an appropriate measure for that purpose.  Spring Valley has submitted evidence that 6% interest on the amounts due, properly amortized through April 23, 2015, amounts to $8,887.99.  Botta Decl. ¶ 18 & Ex. 3.  Additional interest accrues through the date of this judgment at $19.24 per day.  *Id.* ¶ 20.

With respect to Salad Farm, the declaration of its president, Lex A. Camany, and the supporting documentation satisfies the Court that Defendants owe Salad Farm the principal amount of $18,843.32.  Camany Decl. ¶¶ 6, 12 & Ex. 1.  Salad Farm's invoices to Defendants imposed interest on late payments at the rate of 18% per year.  *See* Botta Decl. ¶ 16 & Ex. 1.

7

Contractually imposed interest and attorney fees are properly recoverable as sums owing in connection with PACA transactions. *Middle Mountain*, 307 F.3d at 122-23; *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 630 (11th Cir. 2004); *Food Team Int'l, Ltd. v. Unilink, LLC*, 827 F. Supp. 2d 405, 419 (E.D. Pa. 2012). Salad Farm has submitted an amortization schedule reflecting that interest at 18% per year from the date payment was due until April 23, 2015 amounts to $3,969.66 and that additional interest accrues through the date of this judgment at the rate of $9.30 per day. Botta Decl. ¶ 16 & Ex. 2. Salad Farm's invoices also required Defendants to pay it legal fees and costs incurred in this action. Salad Farm has submitted the declaration of Bart M. Botta and supporting legal invoices documenting its claim that it is entitled to $6,247.87 in legal fees and costs.[4] The Court has reviewed those documents and finds the amount claimed to be substantiated and the fees charged to be reasonable. Accordingly, the Court will award legal fees and costs to Salad Farm in that amount.

Both Spring Valley and Salad Farm seek postjudgment interest. Spring Valley seeks such interest at the same rate as it seeks prejudgment interest: the 6% Pennsylvania statutory rate for contracts. Mot. at 11. Salad Farm seeks postjudgment interest at the rate specified in its invoices: 18% per year. *Id*. While the Court will award postjudgment interest, it will not do so at the requested rates. That is because the availability of postjudgment interest in an action arising under a federal statute is governed by federal law, *Poleto*, 826 F.2d at 1274, and postjudgment interest is statutorily mandated for all federal judgments at the rate set forth in 28 U.C.C. § 1961. To be sure, there is some question as to whether parties can contractually agree to a different rate. The Third Circuit has yet to rule on the issue. Other circuit courts, however,

---

[4] Botta's declaration establishes that Plaintiffs' collectively incurred legal fees in this matter totaling $44,176.50. Salad Farm paid 13.98% of that total—$6,247.87—in keeping with its share of the amount Plaintiffs' seek to recover in this action. Botta Decl. ¶ 12-15.

have held that parties may specify a different rate in a contract for postjudgment interest through "'clear, unambiguous and unequivocal'" language. *Jack Henry & Assocs. v. BSC, Inc.*, 487 F. App'x 246, 259-60 (6th Cir. 2012) (quoting *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010)); *Kanawha-Gauley Cola & Coke Co. v. Pittston Min. Grp., Inc.*, 501 F. App'x 247, 255 (4th Cir. 2012); *In re Riebesell*, 586 F.3d 782, 794-95 (10th Cir. 2009). However, even assuming that the parties may contract for their own postjudgment interest rate, a contract term, like the one stated in Salad Farm's invoices, which merely states a rate of interest to be applied to late payments is insufficient to meet that standard. *TIG Ins. Co. v. Tyco Int'l, Inc.*, 919 F. Supp.2d 439, 476 (M.D. Pa. 2013) (contract must explicitly refer to postjudgment interest or statutory rate applies). Therefore, Salad Farm is entitled to postjudgment interest at the statutory rate rather than the 18% it requests. Spring Valley's invoices do not specify any rate of interest and so it, too, is entitled only to the statutory rate of postjudgment interest. Accordingly, both Salad Farm and Spring Valley shall be entitled to postjudgment interest on the entire amount of the judgment, "interest to be calculated from the date of entry of the judgment at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar year preceding." 28 U.S.C. § 1961(a).

    An appropriate Order follows.

Date:  May 18, 2015

                                                **BY THE COURT:**

                                                **/S/WENDY BEETLESTONE, J.**

                                                _____

                                                **WENDY BEETLESTONE, J.**